**TENNESSEE ENVIRONMENTAL COUNCIL, Plaintiff/Appellant,**

v.

**SOLID WASTE DISPOSAL CONTROL BOARD, Division of Solid Waste Management, Tennessee Department of Health and Environment, Defendants/Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 2, 1992.

Dianna Baker Shew, Farris, Warfield & Kanaday, Nashville, for plaintiff/appellant.

Charles W. Burson, Atty. Gen. and Reporter and Barry Turner, Deputy Atty. Gen., Nashville, for defendants/appellees.

## OPINION

TODD, Presiding Judge.

The Tennessee Environmental Council (the Council) has appealed from a judgment of the Trial Court affirming an order of the Tennessee Solid Waste Disposal Board (the Board) adopting Administrative Rule 1200–1–14 regulating commercial hazardous waste management facilities pursuant to T.C.A. § 68–46–107.

The Council asserts that the Board acted illegally by promulgating said rule without disclosing advisory information and opportunity for public notice and comment.

Chapter 552 of the Acts of the 1989 General Assembly, T.C.A. § 68–46–107(d)(10), requires that, on or before January 1, 1990, the Board adopt regulations governing "siting (location) of commercial hazardous waste storage, treatment and disposal facilities in Tennessee." The Act sets out eight factors which the Board must consider in making such regulations.

On July 27, 1989, the Board transmitted to the Secretary of State a notice of rule making proceedings and public hearings, containing the following:

> There will be three (3) public hearings held by the Tennessee Department of Health and Environment, Division of Solid Waste Management, acting on behalf of the Tennessee Solid Waste Disposal Control Board, to consider the adoption and promulgation of rules and amendments of rules pursuant to Part 1—Hazardous Waste Management Act of 1977 as amended, Tennessee Code Annotated, Sections 68–46–107(d) and 68–46–108. The hearings will be conducted in the manner prescribed by the Uniform Administrative Procedures Act, Tennessee Code Annotated, Section 4–5–204, and will take place at the specified locations and times as follows:

| Date | Time | Location |
|------|------|----------|
| Sept. 5, 1989 | 7:00 PM | University of Tennessee Agricultural Extension Service Auditorium 309 North Parkway Jackson, TN |
| Sept. 6, 1989 | 7:00 PM | Legislative Plaza Room 29 6th Ave. North and Union Avenue Nashville, TN |
| Sept. 7, 1989 | 7:00 PM | City–County Bldg., Small Assembly Room 400 Main Ave. Knoxville, TN |

*Summary of Proposed Rules*

Proposed are new and revised rules intended to implement T.C.A. Sections 68–46–101 et seq as amended in 1989. Primarily, these rules provide for the siting (permitting) of new commercial facilities for the storage, treatment or disposal of hazardous waste in Tennessee. Further, the proposed rules identify certain criteria to be considered in carrying out such activities through public involvement.

*Other Information*

The Division has prepared draft rules for public review and comment. Copies of these draft rules are available for review at the Division Field Offices located as follows:

....

A limited number of copies are also available for distribution to interested persons. Such copies may be requested by calling or writing Mr. Gerald Ingram at:

Division of Solid Waste Management Tennessee Department of Health and Environment

4th Floor, Customs House

701 Broadway

Nashville, TN 37219–5403

....

Oral or written comments are invited at the hearings. In addition, written comments may be submitted to the Division at the above address prior to or after the public hearings. However, such written comments must be received by the Division by 4:30 PM, September 25, 1989 in order to assure consideration. For further information, contact Gerald Ingram at the above address or telephone number.

Said notice was published in 8 newspapers of general circulation throughout the state and by a general press release on August 22, 1989.

The three public meetings were well attended and numerous comments were received. The Council was represented at the Nashville meeting.

As stated in the notice, "draft rules" were available for examination before and during said meetings. However, the "draft rules" were not adopted in the form distributed, but were amended upon consideration of comments received at the meetings *and* documents received after the meetings including "draft preliminary Federal Environmental Protection Agency Regulations." It was announced at the meetings that additional information would be sought from state and federal sources.

Further public meetings were held on October 4, 1989, November 15–16, 1989, November 28–29, 1989, and December 6, 1989, but without the formal notice through the Secretary of State. Public notice was given of said meetings each of which was attended by the public. Representatives of the Council, attended all meetings except the November 28–29, 1989, meeting. A final draft of regulations was adopted at the December meeting, but was partially disapproved by the Attorney General, which required a further public meeting on June 5, 1990, after public notice. Representatives of the Council and other members of the public were present at the June 5, 1990 meeting, when the Board adopted a revised version of the regulations which received the approval of the Attorney General and became effective on July 28, 1990.

There is no complaint as to compliance with T.C.A. § 4–5–203 in the initiation of the rule making procedure. The complaint is that the Board failed to repeat the publication required by § 4–5–203 when it departed from the text of the "draft rules" mentioned in the above quoted notice as being available at the offices of the Solid Waste Management Division.

In connection with this complaint, § 4–5–203 contains the following provision:

(B) Nothing in this section shall be construed to preclude an agency from

making changes in the rule being proposed after the public hearing, so long as the changes are within the scope of the rulemaking notice filed with the secretary of state.

The section of the notice quoted above entitled "Summary of Proposed Rules" conveyed to the public due notice of the scope of rules to be considered, and the rules which were ultimately adopted do not exceed the scope of the notice.

■ It would be most unreasonable and inefficient to require an agency to publish the exact text of a proposed rule in order to obtain public reaction thereto and then require a republication and rehearing for every alteration made in the proposed rule before final adoption. Subsection B, quoted above, was enacted for the salutary purpose of avoiding such an unreasonable effect of the statute.

The Council cites authorities requiring "a meaningful opportunity to comment on the proposed regulation," and "a fair opportunity to present their views on the final plan."

The Council was in almost constant attendance at the public meetings of the Board during the consideration of the six successive drafts, including the final draft of the rules. All other members of the public were on notice of the continuing process of formulating the rules and had the privilege and opportunity of attendance and comment.

It is true that, at the September, 1989 meetings, it was announced that comment would be received until September 25, 1989. It is likewise true that additional information and comment was continuously received and considered after September 25, 1989. However, from the initial notice sent to and promulgated by the Secretary of State, the Council and other members of the public were on notice that the process of formulating rules on the stated subject would be an ongoing activity until the final form of the rules should be approved and published. Those who were interested enough to attend the first meeting were so informed; and, at subsequent meetings, those present were reminded and fully informed of the development of the text of the Rules.

■ The Council does not complain that it was not kept informed. It complains that others, who did not attend subsequent meetings were not alerted by a second publication before adoption of the final draft.

T.C.A. § 4–5–322 provides that:

A person who is aggrieved by a final decision in a contested (administrative) case is entitled to a judicial review. ...

Since the Council had adequate notice of the administrative proceedings and complains only of possible lack of notice to others, it does not appear that the Council is an "aggrieved party" within the contemplation of § 4–5–322. *Tennessee Health Improvement Council v. Tenn. Health Facilities Comm.,* Tenn.App. 1981, 626 S.W.2d 272.

■ When a plaintiff's standing is brought into issue, the relevant inquiry is whether the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

■ A person challenging the actions of an administrative agency must satisfy the requirements of standing to sue. 73A C.J.S. Public Admn. Law and Proc., § 189, p. 201.

■ When the purposes of procedural requirements have been met, there is no need for the courts to require rigid adherence to formalistic rules. Complaint by a participant who had actual notice and adequate opportunity is precluded. *Brown & Williamson Tobacco Corp. v. F.T.C.,* U.S.C.A. 6th Cir.1983, 710 F.2d 1165 cert. den., 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984).

To the same effect are *White v. Henry,* 199 Tenn. 219, 285 S.W.2d 353 (1955) and

*Wilgus v. City of Murfreesboro,* Tenn. App., 532 S.W.2d 50.

After participating fully in the proceedings before the Board, the Council does not have standing to complain that it was aggrieved that others did not have equal opportunity.

■ Even if it should be held that the Council has standing to seek review on the ground stated, the action of the Board must be affirmed because it substantially complied with the requirements of the Uniform Administrative Procedures Act.

The Council cites *U.S. Life Title Ins. Co. v. Dept. of Commerce and Insurance,* Tenn.App. 1989, 770 S.W.2d 537. In that case, the Commissioner of Commerce and Insurance adopted regulations affecting title insurance companies. Notice of a rulemaking hearing was mailed to most of the title insurance companies, but two companies were omitted, had no notice of and did not attend the meeting. One of the omitted companies learned of the meeting two days after it occurred and, *while the record remained open* submitted written objections.

This Court invalidated the rules and said:

The UAPA's notice requirements were only intended to be minimum requirements. The General Assembly did not desire to supplant or relax the more stringent notice procedures many agencies were already required to follow. Thus, Tenn.Code Ann. § 4–5–203(a)(1) provides that, in addition to publishing notice in the *Tennessee Administrative Register,* agencies must also provide the notice required by any other statute "applicable to the specific agency or a specific rule or class of rules under consideration."

. . . .

The Title Insurance Law imposes independent procedural constraints on the commissioner's rulemaking power. Tenn.Code Ann. § 56–35–122 provides, in part, that:

no such rule or regulation shall take effect until the same shall have been duly filed in the commissioner's office and until and after the expiration of thirty (30) days written notice to all insurance companies doing business in the state of Tennessee and after a hearing, if such shall have been requested in writing by any title insurance company prior to the termination of said thirty-day period.

. . . .

Substantial compliance with statutory notice requirements is a necessary prerequisite to valid rulemaking proceedings. In light of the importance of adequate notice and the effect the proposed rules have on both the title insurance industry and consumers, we find that the commissioner failed to prove substantial compliance with Tenn.Code Ann. § 56–35–122. Accordingly, the 1983 amendments to Rule 0780–1–12 are invalid and unenforceable. . . .

770 S.W.2d at 540, 543

It is seen that the cited decision was based upon failure to comply with a provision of the Title Insurance Law which is inapplicable to the present case.

The Council cites *National Black Media Coalition v. Federal Communications Commission,* U.S.C.A., 2nd Cir.1986, 791 F.2d 1016, wherein it was held that the Commission did not give proper notice to interested parties and relied upon inadequately disclosed data to reach its conclusions. In the present case, no question is made as to the adequacy of the initial notice; and T.C.A. § 4–5–203(c)(2)(B), quoted above, validates the modifications within the scope of the notice. Moreover, the repeated public meetings and public discussions of all provisions of the final draft were adequate opportunity to the Council and the public to convey to the Board any desired information and/or argument.

In *BASF Wyandotte Corp. v. Costle,* U.S.C.A. 1st Cir.1979, 598 F.2d 637, it was held that regulations were not invalid be-

cause the final draft was so different from the first draft that interim drafts were not notice, and that use of data by the agency was not violative of the Administrative Procedure Act. The Court said:

> The essential inquiry is whether the commenters have had a fair opportunity to present their views on the contents of the final plan.

598 F.2d at 642.

In *Shell Oil Company v. Environmental Protection Agency,* U.S.C.A. DC, 1991, 950 F.2d 741, it was held that the Agency failed to give sufficient notice and opportunity for comment in respect to the adoption of a rule which was not "implicit in nor logical outgrowth of proposed rule." In the present case, the final draft was implicit in and a logical outgrowth of the original proposal and the procedure outlined above afforded interested parties ample opportunity for comment and opposition.

In *Natural Resources Defense Council, Inc. v. U.S. Environmental Protection Agency,* U.S.C.A. DC, 1987, 824 F.2d 1258, it was held that a regulation was arbitrary and capricious for failure to explain or reconcile two regulatory standards which represented changes in the final draft "not in character with the original scheme" and "not a logical outgrowth of the notice and comment." Such infirmities are not found in the present procedure.

*American Federation of Labor v. Donovan,* U.S.C.A. DC, 1985, 757 F.2d 330, vacated a part of a rule which was found to be outside the scope of the original notice. In the present case, and under the procedure followed, the final draft was not outside the scope of the original notice. In that case, one of the plaintiffs actively participated in the ongoing proceedings, but there were other plaintiffs who did not. In the present case, the only plaintiff did actively participate.

■ Administrative rule making does not require that the specific terms of a rule be determined in advance and be finally adopted without modification. It is sufficient if the statutory publication is adequate to inform the public of the subject matter of the rule to be considered and that the public have adequate opportunity to present and support its views as to what rule should be made regarding that subject matter. *See Bassett v. State Fish and Wildlife Commission,* 27 Or.App. 639, 556 P.2d 1382 (1976); *Western Oil & Gas Assn. v. Air Resources Board,* 37 Cal.3d 502, 208 Cal.Rptr. 850, 691 P.2d 606 (1984), *Rybachek v. E.P.A.,* 9th Cir.1990, 904 F.2d 1276; *California Citizens Bank Assn. v. United States,* 9th Cir.1967, 375 F.2d 43, cert. den., 389 U.S. 844, 88 S.Ct. 96, 19 L.Ed.2d 112 (1967); *American Transfer & Storage Co. v. Interstate Commerce Commission,* 5th Cir.1983, 719 F.2d 1283; *Action on Children's Television v. Federal Communications Commission,* DC Cir.1977, 564 F.2d, 458.

■ Interested parties are not entitled to a new publication in order to validate the consideration of additional factual information nor to an opportunity of rebuttal so long as the finished product is within the bounds of the original publication. *BASF Wyandotte Corp. v. Costle, supra; Rybachek v. E.P.A., supra; Chemical Mfr. Assn. v. E.P.A.,* 5th Cir.1989, 870 F.2d 177; *Air Transport Assn. v. C.A.B.,* DC Cir. 1984, 732 F.2d 219; *Community Nutrition Ins't. v. Block,* DC Cir.1984, 749 F.2d 50.

In the present case, it is uncontroverted that the Council and the public had a fair opportunity to present their views of the final plan.

No fatal flaw is found in the administrative proceedings under review. The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellant and its surety. The cause is remanded to the Trial Court for such further proceedings as may be necessary and proper.

Affirmed and Remanded.

CANTRELL and KOCH, JJ., concur.