IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 13, 2011 Session

## WILLIAM H. THOMAS, JR. v. TENNESSEE DEPARTMENT OF TRANSPORTATION ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. CH-07-2186-III     Ellen H. Lyle, Chancellor**

---

**No. M2010-01925-COA-R3-CV - Filed August 5, 2011**

---

An applicant for a billboard permit appeals the dismissal of his Petition for Judicial Review of the decision of the Commissioner of Tennessee Department of Transportation to deny his application. During the pendency of this action, the applicant admitted he had sold his leasehold interest in the property on which the billboard was to be located. Upon the filing of a motion to dismiss for lack of standing, the trial court concluded that petitioner "lacks standing to maintain this lawsuit and this cause is moot as a matter of law." We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

William H. Thomas, Jr., Esq., Memphis, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter, and Larry M. Teague, Deputy Attorney General, for the appellee, Tennessee Department of Transportation.

Robert L. J. Spence, Jr., Memphis, Tennessee, for the appellee, Clear Channel Outdoor, Inc.

### OPINION

This controversy arose in 2004 over two competing applications for permits to construct billboards, filed respectively by the Petitioner, Mr. William H. Thomas, Jr., and the Respondent Clear Channel Outdoor, Inc. ("Clear Channel"), with the Respondent Tennessee Department of Transportation, ("TDOT," or collectively, "Respondents"). Following a series of administrative proceedings, the Petitioner and the Respondents, as well as several other interested parties, engaged in protracted litigation in both Shelby and Davidson Counties in

separate but related suits regarding TDOT's handling of the billboard permit applications and administrative hearings.

Currently before this Court is a petition filed by Thomas for Judicial Review of the Commissioner of TDOT's Final Order denying him the permits, and granting them to Clear Channel. The complexity of the relationships – among the parties and the various administrative and judicial proceedings – has necessitated an abbreviation of some detail in the history of this case for the purposes of this opinion.[1] The facts and procedural history relevant to our holding today are as follows.

Administrative Proceedings

In late August 2004, Mr. Thomas and Clear Channel each submitted applications for billboard construction permits, known as "Outdoor Advertising Device Permits," to the Beautification Office of TDOT.[2] The sites requested by Thomas and Clear Channel for the location of the billboards were located approximately 50 feet apart on adjoining plots of land along I-40 East in Shelby County, Tennessee. Thomas was leasing the land for his proposed site from Southern Millwork and Lumber Company, Inc. ("Southern Millwork"). Clear Channel was leasing the land for its proposed site from Tennison Brothers, Inc. ("Tennison Brothers"). At the time, Clear Channel held previously issued billboard permits, nos. 79-1666 and 79-1667, for billboards located on the same Southern Millwork site Thomas was now requesting; the Clear Channel billboards were removed in 2003 but the permits had not been revoked.[3]

TDOT Rule 1680-2-3-.03(1)(a)4(i)(I) provides that, "no two structures shall be spaced less than 1000 feet apart on the same side of the highway;" thus, because Thomas and Clear Channel requested sites only 50 feet apart, they could not both receive the permits. Subpart –5(i) also provides:

---

[1]The 2010 Court of Appeals case, *State ex rel. Comm'r of TDOT v. Thomas*, 336 S.W.3d 588 (Tenn. Ct. App. 2010), provides an extensive procedural history of this billboard construction permit saga.

[2]The Beautification Office, specifically the Outdoor Advertising Control Program, is responsible for regulating billboard construction and maintenance along Interstates, National Highways, and Federal-aid Primary Highway System Routes in Tennessee, to ensure compliance with state and federal law, and to "Keep Tennessee Beautiful." The relevant regulations are provided in Tenn. Comp. R & Regs. 1680-2-3-.03, "Criteria for the Erection and Control of Outdoor Advertising."

[3]The record does not reflect why the permits had not been surrendered or revoked prior to Clear Channel's application for the new Tennison Brother site. Clear Channel surrendered the old permits, nos. 79-1666 & 79-1667, prior to TDOT's site inspection of the proposed Tennison Brothers site.

Permit applications will be considered on a first come first serve basis. The applicant must either show proof of ownership of the property or submit a valid land lease or an affidavit signed by the property owner stating that permission has been given to erect this particular outdoor advertising device. The property owner's signature must be notarized. . . . Incomplete applications with accompanying fees will be returned without action.[4]

Thomas's application packet was received and reviewed by Connie Gilliam, a TDOT transportation specialist, on August 24, 2004. The packet contained the completed form signed by Thomas, the application fee, a letter from the president of Southern Millwork requesting a revocation of permit nos. 79-1666 and 79-1667, and a signed lease agreement between Thomas and Southern Millwork. However, Thomas's application was rejected because the signatures on the lease agreement were not notarized.

The same day TDOT rejected Thomas's application, TDOT received Clear Channel's application for the nearby Tennison Brothers site. The application was accompanied by all the necessary paperwork, including a notarized lease agreement between Clear Channel and Tennison Brothers. The application was immediately approved pending the results of a "site inspection," during which a TDOT employee visits the proposed location and measures the distances between other billboards to ensure compliance with the spacing regulations.

On August 31, prior to the site inspection, Clear Channel formally requested revocation of permits 79-1666 and 79-1667 so that the new billboards could be constructed on the Tennison Brothers site without violating the 1000 feet spacing rule. Because the permits were revoked prior to the inspection, the site was approved, and TDOT awarded Clear Channel permit nos. 79-2921 and 79-2922 on September 8, 2004.

In the meantime, Thomas obtained the proper documentation and resubmitted his application on August 31; however, Thomas's second application was also rejected, this time on the grounds that his proposed site violated the spacing requirement as a result of Clear Channel's recently approved application. Thomas was notified on September 13, and shortly thereafter, he requested an administrative hearing, prompting TDOT to temporarily void

---

[4]This is the 2004 version, in force at the time of Thomas's and Clear Channel's applications. The current version of the "first come first serve" rule, which has been modified in ways not relevant to this case, can be found at Tenn. Comp. R & Regs. 1680-2-3-.03(1)(a)7(v). Additionally, the requirements for proof of ownership or a notarized lease or affidavit from the property owner can be found at –(a)6(iv)(III); and the rule that an application will not be considered unless it is completed and accompanied by all the necessary documentation can be found at –(a)7(I).

Clear Channel's new permits pending the outcome of the administrative proceedings. Clear Channel then also appealed.

The matter was designated as No. 22.01-063021J, and a hearing was held before an administrative law judge on June 22, 2005.

The main issue during the administrative proceedings concerned the interpretation of a provision in TDOT's Outdoor Advertising Device Application that prohibited the permit applicant from also notarizing the requisite lease or affidavit from the landowner granting permission to construct a billboard on the site.[5] Larry Quas, the real estate manager for Clear Channel in Memphis, completed and signed the permit application, and he also notarized the lease agreement between Clear Channel and Tennison Brothers.

The ALJ determined that the notarization by Quas was ineffective because he was also the permit "applicant," acting as an agent for Clear Channel; and, as a result, Clear Channel's application should have been denied, and Thomas's second application should prevail. Thus, in his First Initial Order entered October 20, 2005, the ALJ ordered TDOT to void Clear Channel's permits and grant Thomas's application. Clear Channel then filed an appeal with the Administrative Procedures Division of the Tennessee Secretary of State ("APD") to be heard by the Commissioner of TDOT. The APD immediately issued notice to the parties that the Initial Order would not become final and would not be enforceable until the appeal was resolved. However, Thomas ignored the notice from the APD and proceeded to erect a billboard on the Southern Millwork site. Because the appeal was still pending, Thomas was acting without a permit, in violation of Tenn. Code Ann. § 54-21-104.

Ultimately, the Commissioner of TDOT reversed the First Initial Order from October 2005 granting the permits to Thomas, and ordered the permits to be re-issued to Clear Channel. The Commissioner found that although Mr. Quas had signed the application, the true applicant was Clear Channel; thus, "the notarization [of the lease] by Quas is valid . . . and, there being no evidence of fraudulent motive, should not be voided solely because he is an employee of the applicant." He further found that because the disputed provision in the application "was not promulgated as part of the rulemaking process," it "is void and

_____

[5]There was also an issue concerning the fact that, when Clear Channel applied for the new permits, it still held the old permits, nos. 79-1666 and 79-1667, which were only 50 feet away from Clear Channel's new proposed site and which would have prohibited Clear Channel from receiving the new permits as a result of the spacing rule. However, the first administrative law judge determined the operative date for determining compliance with the 1000 feet spacing requirement was the date of the site inspection, which took place September 8, approximately 1 week after Clear Channel's old permits had been revoked. Thus, the location for the new permits was in compliance. This determination was approved by the Commissioner of TDOT.

unenforceable as a departmental rule." Last, he found Thomas had erected the billboard illegally, and that it would have to be removed. All of these findings were included in the Commissioner's Final Order, issued July 31, 2007. This Final Order is the subject of this appeal.

## Judicial Proceedings

Thomas filed a timely Petition for Judicial Review of the Commissioner's Final Order ("Petition for Judicial Review") in the Davidson County Chancery Court on September 28, 2007, pursuant to Tenn. Code Ann. § 4-5-322 of the Tennessee Uniform Administrative Procedures Act ("UAPA"), Tenn. Code Ann. § 4-5-101 *et. seq.* He alleged that the Commissioner erred by refusing to enforce the First Initial Order from October 2005, in which he was granted the permits.

Much of the focus during these proceedings related to findings in a separate but related case in Shelby County. Thomas had been denied billboard permits for several other sites in Shelby County in addition to the Southern Millwork site, but had nonetheless commenced constructing billboards on at least four of these sites, including the Southern Millwork site, in violation of Tenn. Code Ann. § 54-21-104. TDOT filed a petition in the Shelby County Chancery Court seeking to enjoin Thomas's actions, to which Thomas responded by filing a counterclaim alleging that TDOT personnel were "legally biased," and had selectively and vindictively enforced regulations against him. He sought a stay of all administrative and judicial proceedings involving himself and TDOT. After lengthy evidentiary hearings, the Shelby County Chancellor found in Thomas's favor on several of his claims, although he was not granted relief on the Southern Millwork site. TDOT appealed, and due to the nature of Thomas's counterclaims, the entire matter was dismissed by the Court of Appeals for lack of subject matter jurisdiction.[6] *See Comm'r of TDOT v. Thomas*, 336 S.W.3d 588, 608 (Tenn. Ct. App. 2010).

Although the dismissal for lack of subject matter jurisdiction rendered the findings from the Shelby County court void, Thomas made several attempts to introduce these findings into the record of the case at bar. The Davidson County court allowed Thomas to engage in "limited" discovery concerning the matters raised before the Shelby County Court

---

[6]Thomas asserted counterclaims for violation of his due process and equal protection rights against TDOT, and sought an injunction to require TDOT to issue the permits to him, and to enjoin TDOT from enforcing its regulations against him in a discriminatory manner. *Comm'r of TDOT v. Thomas*, 336 S.W.3d 588, 594, 602 (Tenn. Ct. App. 2010) (quoting *Sw. Williamson County Comm. Ass'n v. Saltsman*, 66 S.W.3d 872, 881 (Tenn. Ct. App. 2001) (Holding that under Tenn. Code Ann. § 4-4-104(a), "the General Assembly has clearly prescribed that a suit against a commissioner in his or her official capacity, *i.e.*, a suit against the State, must be brought in Davidson County.")).

that related to the Southern Millwork site, and set a final hearing for November 22, 2010. However, due to information revealed in yet another action, the final hearing never took place.

On November 16, 2009, Thomas was ordered to testify after failing to comply with written discovery requests in a proceeding initiated by Tennison Brothers, Clear Channel's landlord, in Shelby County.[7] During his testimony, Thomas revealed that he no longer had an interest in the Southern Millwork Property. He stated that he had sold his leasehold interest in the real property, as well as the billboard structure itself, to CBS Outdoor, Inc. ("CBS")[8] in December 2005, almost two years prior to filing the Petition for Judicial Review at issue here.

This revelation led Clear Channel to file a Motion to Dismiss Thomas's Petition for Judicial Review in the case at bar, which motion was joined in by TDOT. The movants argued that Thomas lacked standing to maintain this action or to seek the relief prayed for in his Petition, and that all of the issues had been rendered moot because Thomas no longer had any interest in the real property or the billboard, and was thus ineligible to receive the permits that were the subject of the petition.

In response to the Motion to Dismiss, Thomas asserted that he "has been and remains the real party in interest in this proceeding to pursue all legal rights available [because] he will be required to indemnify CBS, Outdoor, Inc. from any and all economic losses that may occur." He presented a sworn affidavit from David C. Hogue, the real estate manager for CBS in Memphis, which stated that CBS purchased the rights to the property and the billboard structure based on Thomas's representations that he was entitled to the permits, and that CBS expected indemnification in the event Thomas did not obtain the permits. Thomas also presented his own sworn affidavit to the same effect.

A hearing was held May 21, 2010. The trial court held:

The Court finds that the Petitioner no longer owns or operates the outdoor advertising device that relates to the state billboard applications . . . which were denied by TDOT and that are the subject of this appeal and, as a result, Petitioner lacks standing to maintain this lawsuit and this cause is moot as a matter of law.

_____

[7]This case involved claims by Tennison Brothers that Thomas interfered with the contractual relationship between Tennison Brothers and Clear Channel.

[8]CBS Outdoor, Inc., is now Viacom Outdoor, Inc.

Following the entry of the order on June 14, 2010, TDOT and Thomas each filed a series of motions. TDOT filed a Motion to Alter or Amend the final order, seeking to remove language from the order which stated that Thomas was contractually bound to indemnify CBS in the event he was not ultimately granted the permits. TDOT argued that Thomas failed to present evidence to support such a finding: the affidavits did not reference a contractual obligation for indemnification, rather just an "expectation" of indemnification, and Thomas failed to otherwise produce evidence of a contractual obligation to indemnify CBS.

For his part, Thomas filed two Sworn Motions for Reconsideration in an effort to introduce into evidence two agreements between himself and CBS, which, he insisted, established his standing.[9] The trial court denied Thomas's motions for several reasons, including his failure to present the agreements prior to the entry of the trial court's order of dismissal. The trial court granted TDOT's motion, removed the disputed language from the order, and issued a final order on August 11, 2010. Thomas filed a timely appeal.

## STANDARD OF REVIEW

As our Supreme Court recently confirmed in *Webb v. Nashville Area Habitat for Humanity, Inc.*, __ S.W.3d __, 2011 WL 2905584, at *2-3 (Tenn. July 21, 2011), the standards by which Tennessee courts are to assess a Tenn. R. Civ. P. 12.02(6) motion to dismiss are well established and have not changed since the adoption of the Tennessee Rules of Civil Procedure in 1970.[10] As the Court explained:

A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009). The resolution of a

---

[9]The first agreement was a "redacted copy" of a "Purchase and Sale Agreement" between Thomas and CBS. According to Thomas, the Purchase and Sale Agreement showed that he "has agreed to repurchase all rights of CBS in and to the Southern Millwork sign lease and the state and local billboard applications and permits relating thereto." The trial court found that, "even when viewed in the best light for Thomas, the Agreement is clearly not what he alleges it to be; there is no reference in the Agreement to the Southern Millworks billboard in the entire document." The court also found the document was "improperly redacted . . . [and] incomplete." The second was an "Agreement Granting Perpetual Easements," purportedly from Southern Millwork to Thomas, which had not been executed until July 15, 2010, one month prior to the entry of the final order granting Clear Channel's motion to dismiss. The trial court rejected Thomas's argument that, this document established that he held a "leasehold" interest in the Southern Millwork property.

[10]In *Webb*, the Tennessee Supreme Court made it clear that the "plausibility" pleading standard set forth in the recent United States Supreme Court decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, ⸺ U.S. ⸺, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) is not to be followed by Tennessee courts.

12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010). A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005)).

In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31–32 (Tenn. 2007) (quoting *Trau–Med*, 71 S.W.3d at 696); *see Leach v. Taylor*, 124 S.W.3d 87, 92–93 (Tenn. 2004). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo. *Brown*, 328 S.W.3d at 855; *Stein*, 945 S.W.2d at 716.

*Webb*, __ S.W.3d __, 2011 WL 2905584, at *2-3 (some internal citations omitted).

### ANALYSIS

The trial court granted the motions of Clear Channel and TDOT to dismiss upon a finding that "[Thomas] no longer owns or operates the outdoor advertising device that relates to the state billboard application nos. 5498 and 5499 which were denied by TDOT and that are the subject of this appeal and, as a result, *[Thomas] lacks standing to maintain this lawsuit and this cause is moot as a matter of law*." (Emphasis added). On appeal, Thomas argues, *inter alia*, that he is the "real party in interest and is subject to real and absolute injury in the event this lawsuit is dismissed," because "he will be required to indemnify CBS Outdoor, Inc. from any and all economic losses that may occur." Therefore, the dispositive issue is whether Thomas has standing to maintain this action in light of the fact that when he filed this Petition for Judicial Review, he did not own an interest in the property where the billboard was to be located.

### I.

Standing is a judicial doctrine used to determine whether a party is entitled to judicial relief. *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson County*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992). It limits court access to those who have

a justiciable claim. *Huntsville Util. Dist. of Scott County, Tenn. v. General Trust Co.*, 839 S.W.2d 397, 401 (Tenn. Ct. App. 1992); *see also Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005) (stating that a case is not justiciable if it does not involve a genuine, continuing controversy requiring the adjudication of presently existing rights)). It also requires the court to determine whether "the plaintiff has alleged a sufficiently personal and stake in the outcome of the litigation to warrant a judicial intervention." *Wood v. Metro. Nashville & Davidson County Gov't*, 196 S.W.3d 152, 157 (Tenn. Ct. App. 2005) (citing *SunTrust Bank v. Johnson*, 46 S.W.3d 216, 222 (Tenn. Ct. App. 2000)).

"A person challenging the actions of an administrative agency must satisfy the requirements of standing to sue." *Tenn. Envt'l Council v. Solid Waste Disposal Control Bd.*, 852 S.W.2d 893, 896 (Tenn. Ct. App. 1992). Specifically, a plaintiff must show: (1) that he or she has sustained a distinct and palpable injury, (2) that the injury was caused by the challenged conduct, and (3) that the injury is one that can be addressed by a remedy that the court is empowered to give. *City of Chattanooga v. Davis*, 54 S.W.3d 248, 280 (Tenn. 2001); *In re Youngblood*, 895 S.W.2d 322, 326 (Tenn. 1995); *Metro. Air Research*, 842 S.W.2d at 615.

The primary focus of a standing inquiry is on the party, not on the merits of the party's claim. *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002). Because a party's standing may hinge on the nature of its claims, a standing inquiry requires an "examination of the complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Cox v. Shell Oil Co.*, 196 S.W.3d 747, 758 (Tenn. Ct. App. 2005) (citing *Allen v. Wright*, 468 U.S. 737, 753 (1984)). In particular, we must determine whether the plaintiff has alleged an injury to a recognized legal right or interest. *Wood*, 196 S.W.3d at 158.

Thomas alleges his application for the billboard permits to the Southern Millwork site was wrongfully denied by TDOT; he contends TDOT employees selectively enforced policies against him in a vindictive and hostile manner. Because of this, Thomas argues, he will be unable to honor his obligation to deliver the permits to CBS and will be obligated to indemnify CBS for any economic loss it may incur from purchasing a leasehold interest and the billboard structure from him, both of which CBS will be unable to use. He argues these circumstances provide him with standing and entitle him to judicial review of the contested administrative decision under Tenn. Code Ann. § 4-5-322 of the Tennessee Uniform Administrative Procedures Act ("UAPA"). The relevant provision of the UAPA states:

> *A person who is aggrieved by a final decision in a contested case* is entitled to
> judicial review under this chapter, which shall be the only available method of

judicial review. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

Tenn. Code Ann. § 4-5-322(a)(1) (emphasis added).

Where a statute provides the authorization for judicial review of an administrative action, the standing inquiry "must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff." *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972) (emphasis added). The pertinent statute in this matter is Tenn. Code Ann. § 4-5-322(a)(1), which provides that a person must be "aggrieved by a final decision in a contested case," to be entitled to judicial review of a decision by an administrative agency. *Id.* Thus, in order to have standing to maintain this Petition for Judicial Review, Thomas must demonstrate that he is "aggrieved" by the decision of the Commissioner of TDOT to deny his application for the billboard permits for the Southern Millwork site. *See Tenn. Envt'l Council*, 852 S.W.2d at 896.

"To qualify as a person aggrieved, in the legal sense, or as a person having a direct, immediate, and substantial interest in the subject matter of the litigation, a party must have a personal or property right to assert or defend in court . . . ." *Deselm v. Tenn. Peace Officers Standards and Training Comm'n*, No. M2009-01525-COA-R3-CV, 2010 WL 3959627, at *25 (Tenn. Ct. App. Oct. 8, 2010). It must be "an injury to a recognized legal right or interest." *Id.* (citing *Wood*, 196 S.W.3d at 158). Where, as here, a party alleges injury to a legal right defined or created by statute, "the doctrine of standing requires the party to demonstrate that its claim falls within the zone of interests protected or regulated by the statute in question." *Wood*, 196 S.W.3d at 158 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998)).

Thomas has failed to demonstrate that the injury he claims "falls within the zone of interests protected or regulated" by the statutory and regulatory scheme pertaining to billboards. *Id.* The rules pertaining to the issuance of billboard permits are part of a larger regulatory scheme designed to "provide effective control of Outdoor Advertising adjacent to Federal Aid Primary and Federal Aid Interstate highway systems within the State of Tennessee." Tenn. Comp. R. & Regs. 1680-2-3-.01. The legislation authorizing TDOT's rulemaking and enforcement authority, the Billboard Regulation and Control Act of 1972, Tenn. Code Ann. § 54-21-101 *et. seq.*, is in place to "protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty." *See Universal Outdoor, Inc. v. Tennessee Dep't of Transp.*, No. M2006-

02212-COA-R3-CV, 2008 WL 4367555, at *1 (Tenn. Ct. App. Sept. 24, 2008) (quoting 23 U.S.C. § 131(a)). The UAPA provides a mechanism for judicial review to ensure decisions within TDOT are made in furtherance of these goals. Tenn. Code Ann. § 4-5-322.

The injury Thomas claims – that he will suffer economic damages if CBS does not receive billboard permits for a leasehold site that he conveyed to CBS two years prior to the filing of this petition – is not an injury this statutory and regulatory scheme is designed to prevent. At best, it is an indirect consequence of the denial of his application for the permits that might occur. Moreover, holding a permit to construct and maintain a billboard *on property for which one has voluntarily relinquished the right to do either* inhibits TDOT from exercising its authority to decide when and where billboards should be constructed, especially when doing so prevents the issuance of a permit within 1000 feet. *See* Tenn. Comp. R. & Regs. 1680-2-3-.03(1)(a)4(i)(I). Thus, the vindication of the interest Thomas asserts would *work against* the goals sought to be accomplished by the statutory and regulatory scheme. To manipulate the rules in an effort to establish standing to seek the protection those rules provide is impermissible.

For the foregoing reasons, we hold that Thomas lacks standing to seek judicial review of the Commissioner of TDOT's decision to deny his application for billboard permits under Tenn. Code Ann. § 4-5-322(a)(1). Moreover, we find he is not entitled to judicial review of the denial of his application for the billboard permits under any other authority. *See* Tenn. Code Ann. § 4-5-322(a)(1) (stating that review under the UAPA "shall be the only available method of judicial review").

## II.

Setting aside issues of standing, we also find that the claims Thomas asserts in his Petition and the issues he raises on appeal are pretermitted as moot. This is because even if Thomas prevailed on the issues he raises on appeal, which we do not hold, he is not eligible to receive the relief prayed for in his Petition for Judicial Review.

A case must remain justiciable, that is, it must remain a legal controversy, "from the time it is filed until the moment of final appellate disposition." *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam County*, 301 S.W.3d 196, 203-04 (Tenn. 2009). A moot case is one that has lost its justiciability, or "its character as a present, live controversy." *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam County*, 301 S.W.3d 196, 203-04 (Tenn. 2009) (internal citations omitted); *see also McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994) ("A moot case is one that has lost its character as a present, live controversy."). A case will be considered moot "if it no longer serves as a means to provide some sort of judicial relief to the prevailing party," *Nicely*, 182 S.W.3d at 338-39. As

discussed throughout this opinion, Thomas sold the entirety of his interest in both the real property that was to be the site for the billboard, as well as the billboard structure itself, prior to the filing of this petition, rendering himself ineligible to receive the permits and resolving the legal controversy in this matter. Thus, the issues he raises are moot. *See generally, Norma Faye Pyles Lynch Family Purpose LLC*, 301 S.W.3d 196; *McIntyre*, 884 S.W.2d 134.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Petitioner, William H. Thomas, Jr.

_____
FRANK G. CLEMENT, JR., JUDGE