IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 30, 2015 Session

**IN RE: ISAIAH R.**

**Appeal from the Circuit Court for Cocke County**
**No. 33594I, 33595I, 33596I      Ben W. Hooper, II, Judge**

_____

**No. E2015-00026-COA-R3-JV – Filed August 7, 2015**

_____

This appeal arises from a dispute over the placement of the minor child Isaiah R. ("the Child"). The Tennessee Department of Children's Services ("DCS") removed the Child from his parents' custody and placed the Child in a foster home. Certain of the Child's paternal relatives ("Respondents," collectively) intervened in an effort to obtain custody of the Child and take him to California. The Circuit Court for Cocke County ("the Trial Court") adjudicated the Child dependent and neglected, dismissed DCS from the action, and awarded legal and physical custody of the Child to the Child's paternal great uncle. DCS appealed to this Court. We hold that the Interstate Compact on the Placement of Children ("the Compact") applies in this case, that no exemptions to the Compact apply, and that the Trial Court erred in transferring custody of the Child to his great uncle in California without California's approval. We further find that transferring the Child to California is not a proper disposition for the Child given certain troubling facts in the record. We reverse the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and FRANK G. CLEMENT, JR., JJ., joined.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, Alexander S. Rieger, Assistant Attorney General, and, Paul Jordan Scott, Assistant Attorney General, for the appellant, the Tennessee Department of Children's Services.

Charlotte Ann Leibrock, Candice K. Mendez, William M. Leibrock & James R. Scroggins, and, Carter S. Moore, Guardian ad Litem, for the appellees, Daniel R., Gary R., and Bradley R.[1]

**OPINION**

**Background**

The Child was born drug-exposed in November 2011. The Child's father, Bradley R. ("Father"), is incarcerated on a six-year sentence. The Child entered state custody and came to live with Lisa H. ("Foster Mother") after leaving the hospital. In October 2012, DCS placed the Child with his great uncle, Daniel R. ("Great Uncle") and his wife Rebecca ("Great Aunt") in California pursuant to the Compact. Because Great Aunt previously had incurred a criminal conviction for DUI, approval for placement in California with Great Uncle and Great Aunt required a waiver. Under the terms of the approval, California authorities would monitor the home for at least six months. The Great Uncle and Great Aunt were required to report any changes, such as further criminal charges. When Great Uncle worked, Great Aunt provided for the Child's day to day care.

Certain troubling facts about the Great Uncle's and Great Aunt's home environment in California came to light causing California to withdraw its approval of the Child's placement with Great Uncle and Great Aunt. Following the initial approval by California of the placement, Great Aunt incurred a second DUI conviction. Great Aunt later completed alcohol treatment and, by her account, stopped drinking. Great Uncle and Great Aunt did not disclose this second DUI conviction to the California officials. In addition, Great Aunt smokes marijuana, albeit allegedly by prescription. Great Aunt would leave the Child in the care of other adults in the home, go for a walk, and smoke the marijuana. Finally, there was an incident involving the authorities when Great Aunt called 9-1-1 concerning a claimed domestic violence episode involving her adult son. Great Uncle and Great Aunt, again, did not disclose this incident. Great Aunt also admitted that she told authorities that her son, who had moved into the home, was becoming more violent. When the family moved, a new home study was conducted by California. California officials discovered Great Aunt's second DUI conviction and the domestic violence incident resulting in Great Aunt's call to 9-1-1. California subsequently withdrew approval for the Child's placement in the home.

After approximately six months in California, DCS brought the Child back to Tennessee after California withdrew its approval for the Child's placement with Great Uncle and Great Aunt. The Child was returned to Foster Mother's care. Foster Mother is

---

[1] The Child's mother also is named in the action, but she has filed no brief on appeal.

a registered nurse who has made sure that the Child receives various types of care, including speech therapy, behavioral therapy, and physical therapy as needed. As of December 2014, the Child had lived with Foster Mother for 31 out of 37 months since his birth.

Father stipulated to the Child's dependency and neglect, but urged that the Trial Court grant custody of the Child to Great Uncle in California a second time. DCS opposed this, arguing that to transfer custody back to Great Uncle in California without California's authorization would violate the Compact. After a hearing, the Trial Court ruled that the Compact did not apply, that DCS was dismissed from the case, and that the Child's best interest would be served by awarding custody to Great Uncle. In its oral remarks from the bench, the Trial Court based its decision primarily on the blood relationship between the Child and his paternal extended family and a desire to foster that relationship. DCS appealed to this Court.[2]

## Discussion

Although not stated exactly as such, DCS raises the following two issues on appeal: 1) whether the Trial Court erred in concluding that the Compact does not apply in this case; and, 2) whether the Trial Court erred in placing the Child with Great Uncle in California even if the placement did not violate the Compact.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in concluding that the Compact does not apply in this case. The Compact is codified at Tenn. Code Ann. § 37-4-201 *et seq*, with its purposes stated as followed:

> It is the purpose and policy of the party states to cooperate with each other in the interstate placement of children to the end that:

---

[2] Curiously, the Trial Court, after entering its final order in this case, presented a second, more detailed order, which is contained in the record. However, the Trial Court, in handwritten notes on the order, states in this putative order that it is not to be entered as an order. Rather, the Trial Court explained that it was misled into hastily signing the first order and wished to present a fuller, more detailed rationale for its decision. The second "order" is indeed more detailed, but, as the Trial Court specifically stated that it was not to be entered as an order, we will not treat it as such.

(a) Each child requiring placement shall receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care.

(b) The appropriate authorities in a state where a child is to be placed may have full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child.

(c) The proper authorities of the state from which the placement is made may obtain the most complete information on the basis of which to evaluate a projected placement before it is made.

(d) Appropriate jurisdictional arrangements for the care of children will be promoted.

Tenn. Code Ann. § 37-4-201 (2014).

The Compact defines placement as follows:

[T]he arrangement for the care of a child in a family free or boarding home or in a child-caring agency or institution but does not include any institution caring for the mentally ill, mentally defective or epileptic or any institution primarily educational in character, and any hospital or other medical facility . . . .

Tenn. Code Ann. § 37-4-201 (2014). Article VIII of the Compact provides that it shall not apply to:

(a) The sending or bringing of a child into a receiving state by the child's parent, stepparent, grandparent, adult brother or sister, adult uncle or aunt, or the child's guardian and leaving the child with any such relative or non-agency guardian in the receiving state.

Tenn. Code Ann. § 37-4-201 (2014).

A "family free" home has been described as "a home where the child lives without charge and receives the care which children usually receive from their parents as

-4-

part of the process of upbringing." *J.D.S. v. Franks*, 893 P.2d 732, 740 (Ariz. 1995) (quotations omitted).

In this case, the Trial Court sent the Child to live with relatives in California. According to Respondents, this constituted a custody decision involving relatives rather than a placement, and the Compact is not applicable. Alternatively, Respondents argue that the parties in this case are exempt from the terms of the Compact.

In our judgment, the Compact applies. Respondents' conception of and definition of placement is too narrow. The purpose of the Compact is to facilitate cooperation between states regarding the placement of children. The Child's interests are paramount. Here, the Trial Court acted as the sending agency, and dismissing DCS from the case failed to get around the Compact. We find no exemption to be relevant. Whether a transfer of custody, or placement, violates the Compact depends on the circumstances. One condition is that a sister state, here California, approves the placement. The Appellate Court of Connecticut discussed the importance of receiving approval for placement from a sister state under the Compact as follows:

> In sum, none of the cases cited by the respondent support the proposition that a sending agency, in this case a court, may rely on an independent determination of the best interest of the child, to deliberately disregard the requirement of article III(d). We agree with the court in *In re Adoption of Infants H.*, supra, at 904 N.E.2d at 208, that "[t]he conditions for placement set forth in article III of the Compact are designed to provide complete and accurate information regarding children and potential adoptive parents from a sending state to a receiving state and to involve public authorities in the process in order to ensure children have the opportunity to be placed in a suitable environment." See also *In re T.M.J.*, supra, at 878 A.2d at 1203 ("[a]s the [interstate compact] dictates, [the receiving state's] refusal to approve placement of the child with [the maternal grandmother] barred the Superior Court from ordering that disposition"); *In re Luke L.*, 44 Cal.App.4th 670, 681–83, 52 Cal.Rptr.2d 53 (1996) (reversing juvenile court decision authorizing out-of-state placement for failure to receive approval from receiving state).

> In the present case, the commissioner in January, 2008, requested that Florida complete an interstate compact study on the great-grandmother. At the time of the court's decision, the study had not been completed, and Florida had not given notice pursuant to article III(d). Even if the court was justifiably concerned about Florida's delay in processing the request for an interstate compact study, the court's conclusion that it could place the child

-5-

in Florida without approval from the authorities there contravenes the directives of the statute. Accordingly, we hold that the court improperly transferred guardianship to the great-grandmother in Florida.

*In re: Yarisha F.*, 121 Conn. App. 150, 994 A.2d 296, 304 (2010) (footnote omitted).

In the present case, California not only did not approve of the placement, it actually had withdrawn its approval. Therefore, in transferring temporary custody of the Child to Great Uncle in California, the Trial Court violated the Compact. We reverse the Trial Court's order placing the Child with Great Uncle in California.

We next address whether the Trial Court erred in placing the Child with Great Uncle in California even if the placement did not violate the Compact. Our conclusion that the Compact applies and was violated in essence moots this issue but, for purposes of completeness, we will address it.

Tenn. Code Ann. § 37-1-129(c) (2014) provides: "If the court finds from clear and convincing evidence that the child is dependent, neglected or unruly, the court shall proceed immediately or at a postponed hearing to make a proper disposition of the case." Consistent with a child's protection and welfare, a court may order one of a number of dispositions best suited for the child, including transferring temporary legal custody to the following: "Any individual who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child . . . ." Tenn. Code Ann. § 37-1-130(a)(2)(A) (2014).

The Trial Court described the troubling facts out of California as "nitpicking." We disagree strongly with this characterization. Multiple DUIs, marijuana use by Great Aunt while leaving the Child with some other adults in the house, and a reported domestic violence incident involving Great Aunt's adult son resulting in a call to 9-1-1, however it transpired, are serious cause for concern, not mere nitpicking. California certainly thought these incidents, along with the failure by Great Uncle and Great Aunt to report them, were significant enough to withdraw its approval of the Child's placement in their home. A child's blood ties to a potential placement family do not override all other possible dangers to a child's welfare. Indeed, California, the state that did an actual home study of Great Uncle's and Great Aunt's home, withdrew approval of the placement with Great Uncle and Great Aunt. We hold, even if the Compact does not apply, that the Trial Court erred in concluding that the Great Uncle's and Great Aunt's California home was a suitable placement for the Child.

## Conclusion

The judgment of the Trial Court is reversed, custody of the Child is awarded to the Tennessee Department of Children's Services, and this cause is remanded to the Trial Court for collection of the costs below.  The costs on appeal are assessed against the Appellees, Daniel R., Gary R., and Bradley R.

_____
D. MICHAEL SWINEY, JUDGE