# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### April 12, 2016 Session

## IN RE COURTNEY R.

**Appeal from the Circuit Court for Lawrence County**
**No. 291215   J. Russell Parkes, Judge**

_____

**No. M2015-01024-COA-R3-JV – Filed April 28, 2017**

_____

This case concerns the applicability of the Interstate Compact on the Placement of Children ("ICPC"). After the mother abandoned her child, the juvenile court found the child to be dependent and neglected and placed the child in state custody. The State sought provisional placement of the child with her father, who was unaware of the child's existence until the dependency and neglect proceedings. Because the father lived in another state, the State made a request under the ICPC to the father's state of residence for a home evaluation. The response to the request recommended against the placement. In light of the response, the juvenile court held a hearing on disposition in which it ordered the child to remain in State custody. After the father appealed, the circuit court awarded custody to the father and relieved the State of any further responsibility for the child. On appeal to this court, among other things, the mother argues that the ICPC precluded awarding custody to the father. Because we conclude the ICPC did not apply, we affirm the decision of the circuit court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Teresa Brewer Campbell, Lawrenceburg, Tennessee, for the appellant, Shana G.

Randy Hillhouse, Lawrenceburg, Tennessee, for the appellee, Johnican B.

Stacie Odeneal, Lawrenceburg, Tennessee, Guardian Ad Litem.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Rachel E. Buckley, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

# OPINION

## I.

On February 10, 2014, the Juvenile Court of Lawrence County, Tennessee, placed Courtney R. in the custody of the Tennessee Department of Children's Services ("DCS"). The court removed the child based on probable cause of neglect and dependency.[1] Specifically, the court found that remaining in the home of Shana G. ("Mother") and/or her boyfriend was "contrary to the welfare of the child" and "not in the child's best interest." That same day, the court appointed Stacie Odeneal (the "GAL") to serve as guardian ad litem for the child.

The following day, February 11, the GAL filed a petition to determine dependency and neglect and to challenge paternity. Although Mother's boyfriend was named as father on Courtney's birth certificate, both he and Mother apparently acknowledged that he was not Courtney's father. Consequently, among other things, the GAL requested that genetic testing be conducted to exclude the boyfriend as the child's father. Later the GAL filed a motion requesting that the boyfriend be disestablished as the child's father.

Mother and her boyfriend waived both the preliminary and adjudicatory hearings, and the child remained in DCS custody and was placed with foster parents. During this period, Johnican B., a resident of Alabama, came forward claiming to be the child's father. The juvenile court ultimately disestablished Mother's boyfriend as father and established Johnican B. ("Father") as the biological father of Courtney.

Father also waived the preliminary and adjudicatory hearings. And he stipulated that his child was dependent and neglected while in the care of Mother. Mother and Father then participated in the development of a permanency plan. The plan had the alternative permanency goals of returning the child to parent or adoption.

In furtherance of the permanency plan's goals, DCS sought to provisionally place the child with Father. However, before placing Courtney with her father, DCS sought expedited ICPC[2] approval or denial of the placement with the State of Alabama. The ICPC requires that a "sending agency,"[3] among other things, notify the appropriate public

---

[1] *See* Tenn. Code Ann. § 37-1-114(a) (2014).

[2] "An interstate compact is an agreement between states that is both a contract binding the party states and a statute enacted by the legislature of each party state." Bernadette W. Hartfield, *The Role of the Interstate Compact on the Placement of Children in Interstate Adoption*, 68 Neb. L. Rev. 292, 294 (1989).

[3] A "sending agency" is defined to include "a party state [to the ICPC], officer or employee

2

authorities of the state where the child is proposed to be placed. Tenn. Code Ann. § 37-4-201 (2014) (Article III(b)). The placement cannot be made "until the appropriate public authorities in the receiving state . . . notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." *Id.* (Article III(d)).

Alabama authorities did not approve the placement. The letter responding to the ICPC request listed several reasons for disapproval. Alabama authorities cited a report of sexual abuse against Father when he was a minor "coded as 'indicated'" and two later reports coded "not indicated."[4] They noted "major concerns" with Father's parenting abilities. And they referenced worries over the ability of Father to support a child financially and his lack of a support system.

Following Alabama's denial of the placement, on February 9, 2015, the juvenile court held a dispositional hearing[5] on the dependency and neglect petition the same day. The juvenile court ordered that Courtney remain in the custody of DCS. Father appealed to the Circuit Court for Lawrence County.[6]

On April 10, 2015, the circuit court held a de novo hearing. The sole issue presented by Father was the proper disposition of the child. Father requested that he be granted custody. DCS opposed the request, relying on the ICPC's prohibition against placement of a child without the receiving state's approval. DCS also, over Father's objections, introduced into evidence the letter from the Alabama authorities disapproving the placement request.

The circuit court granted custody of the child to Father. The court's order addressed the concerns raised by the Alabama authorities in their letter disapproving the placement. With respect to the allegations of sexual abuse, the court heard from the purported victim in the instance coded "indicated." The victim "testified emphatically

---

thereof; a subdivision of a party state, or officer or employee thereof; a court of a party state; a person, corporation, association, charitable agency or other entity which sends, brings, or causes to be sent or brought any child to another party state." Tenn. Code Ann. § 37-4-201 (Article II(d)).

[4] The letter did not define the terms "indicated" and "not indicated." However, for purposes of Alabama's statewide central registry for reports of child abuse and neglect, "indicated" means "[w]hen credible evidence and professional judgment substantiates that an alleged perpetrator is responsible for child abuse or neglect." Ala. Code § 26-14-8(a)(1) (Westlaw through Act 2017-145 of the 2017 Reg. Session). "Not indicated" means "[w]hen credible evidence and professional judgment does not substantiate that an alleged perpetrator is responsible for child abuse or neglect." *Id.* § 26-14-8(a)(2).

[5] *See* Tenn. Code Ann. § 37-1-129(b)(2) (Supp. 2016).

[6] *See* Tenn. Code Ann. § 37-1-159(a) (Supp. 2016).

that the alleged abuse did not occur, that she ha[d] a good relationship with [Father] and the [Alabama] Department of Human Services did not contact her in August or September 2014 to inquire as to this past abuse." The court found the purported victim "highly credible." The court declined to consider the other reports of abuse against Father. Noting that they "did not result in an 'indication,'" the court found the allegations to be "unreliable hearsay."

With respect to the other concerns raised by the Alabama authorities, the court considered the record as a whole and the evidence presented by Father and found "it [wa]s in the best interests of the child for her to be in the care and custody of her [Father]." The court found Father's home to be appropriate. The court also found both Father and his fiancée "to be very sincere and credible, and apparently capable of raising children, as evidenced by the uncontested proof that they have other children in the home who [we]re being appropriately cared for." The court further noted, contrary to the letter from the Alabama authorities, that Father had "an extended family support system who [we]re willing to assist him in the care of the child."

Then the court considered the applicability of the ICPC. It determined that the ICPC was not applicable because the award of custody to Father was not a placement in foster care. Specifically, the court reasoned as follows:

> it appears that the ICPC concerns only arise when sending a child to another state for continued foster care. However, under this court's authority in a de novo disposition pursuant to TCA 37-1-130, the court has the full panoply of placement options. The court does not have to continue placement of the child in foster care but, in accordance with the statute, has a wide range of options, which are subservient to the best interests of the child. TCA 37-1-130(a) specifically authorizes the court to place the child with a parent, and -- pursuant to section (a)(2)(D) of that same statute — to place the child "in another state, with or without supervision". The court does not make this finding without concerns, but specifically finds that [Father] has fundamental rights to have custody of his child in the absence of a substantial risk of harm to the child. No further supervision by the Department or this court is necessary, as was requested by DCS.

Accordingly, the court relieved DCS and all appointed counsel of "further obligation to this child and family." Mother appeals this determination.

## II.

Before reaching the issues raised by Mother, the GAL has moved that Mother's appeal be dismissed. The GAL asserts that we lack subject matter jurisdiction. The GAL also asserts that Mother lacks standing to pursue her appeal.

A. SUBJECT MATTER JURISDICTION

For a court to have jurisdiction over a controversy, the court must have jurisdiction over both the parties and the subject matter of the proceeding. *State ex rel. Whitehead v. Thompson*, No. 01A01-9511-CH-00538, 1997 WL 749465, at *2 (Tenn. Ct. App. Dec. 5, 1997). Subject matter jurisdiction concerns a court's power to adjudicate a particular type of controversy. *Toms v. Toms*, 98 S.W.3d 140, 143 (Tenn. 2003); *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). It is derived from the Constitution of Tennessee or from legislative acts, either explicitly or by necessary implication. *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977). The parties involved in a controversy cannot bestow subject matter jurisdiction on a court "by appearance, plea, consent, silence, or waiver." *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). To enter a valid, enforceable order, a court must have subject matter jurisdiction. *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955); *SunTrust Bank v. Johnson*, 46 S.W.3d 216, 221 (Tenn. Ct. App. 2000).

The GAL argues that this Court does not have subject matter jurisdiction because Mother failed to appeal the juvenile court's decision on disposition of the child.[7] Dependency and neglect cases are tried in two phases: the adjudicatory phase and the dispositional phase. *See* Tenn. Code Ann. § 37-1-129(b); Tenn. R. Juv. P. 308(b).[8] The GAL points out that only Father appealed to the circuit court and that his appeal was limited to the juvenile court's decision on disposition of the child. Therefore, the GAL submits that Mother "acquiesced to the disposition of the child" and she was permitted no further appeal.

We conclude that Mother was not required to appeal from the juvenile court's final order in order to appeal the circuit court's decision to this Court. Appeals from a juvenile court's order in a dependency and neglect proceeding are made to the circuit court, which must hear witnesses and try the case de novo. Tenn. Code Ann. § 37-1-159(a). We have previously held that the circuit court conducts a trial de novo. *Cornelius v. Tenn. Dep't of Children's Servs.*, 314 S.W.3d 902, 906 (Tenn. Ct. App. 2009); *Kissick v. Kallaher*, No. W2004-02983-COA-R3-CV, 2006 WL 1350999, at *3 (Tenn. Ct. App. May 18, 2006). A trial de novo is "[a] new trial on the entire case — that

---

[7] In support of her argument, the GAL cites *In re Dylan P.*, No. M2012-00639-COA-R3-JV, 2012 WL 5900966 (Tenn. Ct. App. Nov. 21, 2012), which the GAL claims has "a nearly identical fact pattern." However, *In re Dylan P.* is a Memorandum Opinion, and as such, the case should "not be cited or relied on for any reason in any unrelated case." *See* Tenn. Ct. App. R. 10.

[8] The juvenile court proceedings took place prior to the 2016 revisions to the Tennessee Rules of Juvenile Procedure. H. Res. 145 & S. Res. 79, 109th Gen. Assemb., Reg. Sess. (Tenn. 2016). Language similar to that found in Tennessee Rule of Juvenile Procedure 308(b) appeared in former Rule 32(a).

is, on both questions of fact and issues of law — conducted as if there had been no trial in the first instance." <u>Trial de novo</u>, Black's Law Dictionary (10th ed. 2014). "Consequently, the circuit court is not 'reviewing' the juvenile court's decision; instead, it is conducting a new proceeding as though the petition was originally filed in circuit court." *Cornelius*, 314 S.W.3d at 906. [9]

Appeals from decisions in all civil cases, including those of circuit court in dependency and neglect proceedings, lie with this Court. *See* Tenn. Code Ann. § 16-4-108(a) (2009) ("The jurisdiction of the court of appeals is appellate only, and extends to all civil cases except workers' compensation cases and appeals pursuant to § 37-10-304(g)."); *Cornelius*, 314 S.W.3d. at 906-07. An appeal as of right may be taken from "every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals." Tenn. R. App. P. 3(a). That right is not qualified by the necessity to first appeal the juvenile court's decision in the dependency and neglect proceeding.

## B. STANDING

Unlike subject matter jurisdiction, "standing is a judge-made doctrine used to determine whether a particular plaintiff is entitled to judicial relief." *SunTrust Bank*, 46 S.W.3d at 222. Standing serves to limit court access to those who have justiciable claims. *Thomas v. Tenn. Dep't of Transp.*, No. M2010-01925-COA-R3-CV, 2011 WL 3433015, at *6 (Tenn. Ct. App. Aug. 5, 2011); *Wood v. Metro. Nashville & Davidson Co. Gov't*, 196 S.W.3d 152, 157 (Tenn. Ct. App. 2005); *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Co.*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992). For a party to have standing to appeal a trial court's order, they must be "aggrieved" by the order. *Clark v. Perry*, No. 02A01-9704-CH-00080, 1998 WL 34190562, at *7 (Tenn. Ct. App. Mar. 19, 1998) (citing *Ray v. Trapp*, 609 S.W.2d 508, 512 (Tenn. 1980); *Koontz v. Epperson Elec. Co.*, 643 S.W.2d 333, 335 (Tenn. Ct. App. 1982)). For purposes of determining standing, "[a] party is 'aggrieved' when he has an interest recognized by law which is injuriously affected by the order . . . ." *Clark*, 1998 WL 34190562, at *7 (citing *Koontz*, 643 S.W.2d at 335).

Mother clearly possesses an interest recognized by law that was affected by the circuit court's order. A parent has a fundamental right, based in both federal and state constitutions, to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996); *In re Adoption of Female*

---

[9] Perhaps to emphasize the point that the circuit court is conducting a new proceeding, the Legislature amended Tennessee Code Annotated § 37-1-159 in 2016 and added at the end of subsection (a) that "[a]ll parties to the juvenile court proceeding shall be parties to the de novo appeal." Tenn. Code Ann. § 37-1-159(a) (Supp. 2016).

*Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995). A biological parent retains a protected liberty interest in the care and custody of their child, even when they no longer have legal custody. *Matter of McBee*, No. 88-129-II, 1988 WL 87699, at *1 (Tenn. Ct. App. 1988).

## C. APPLICABILITY OF THE ICPC

Having concluded that we have subject matter jurisdiction and that Mother has standing to pursue this appeal, we consider the first of Mother's issues on appeal: whether the trial court erred in holding the ICPC inapplicable to its decision to award Father custody. Resolution of the issue raised by Mother requires interpretation of the statute enacting the ICPC. The interpretation of a statute presents a question of law. *Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016). Our review of questions of law is de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

This is not the first occasion we have had to address the applicability or scope of the ICPC. *See In re Isaiah R.*, 480 S.W.3d 535, 558 (Tenn. Ct. App. 2015); *In re Brian M*, No. E2014-00941-COA-R3-PT, 2015 WL 78179, at *4 (Tenn. Ct. App. Jan. 6, 2015). Nationwide "[t]he scope of the ICPC has frequently been an issue where a child is placed across state lines for the purposes of adoption or foster care." Kurtis A. Kemper, Annotation, *Construction and Application of Interstate Compact on the Placement of Children*, 5 A.L.R.6th 193, 209 (2005).

The distinguishing factor in this case, according to DCS, is that the placement was not for the purposes of adoption or foster care. DCS's position echoes the trial court order: "ICPC concerns only arise when sending a child to another state for continued foster care." And it finds support in Article III of the ICPC, which qualifies the types of placements subject to the requirements of the ICPC:

> No sending agency shall send, bring, or cause to be sent or brought into any other party state any child for *placement in foster care or as a preliminary to a possible adoption* unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein.

Tenn. Code Ann. § 37-4-201 (Article III(a)) (emphasis added).

Mother relies on our decision in *In re Isaiah R.* In that case, also a dependency and neglect proceeding, we looked to the definition of "placement"[10] in the ICPC and

---

[10] Article II of the ICPC defines "placement" as follows:

the arrangement for the care of a child in a family free or boarding home or in a child-

7

concluded that the ICPC applied to a court's award of custody to a child's great uncle. *In re Isaiah R.*, 480 S.W.3d at 538-39. We held that the ICPC applied even though DCS was dismissed from the case. *Id.* at 539. Therefore, the decision strongly implies that a placement does not have to be for foster care or as a preliminary to a possible adoption for the ICPC to apply. *See id.* ("Whether a transfer of custody, or placement, violates the [ICPC] depends on the circumstances.").

Such an interpretation of the ICPC finds support in the ICPC Regulations.[11] Regulation No. 3, entitled "Definitions and Placement Categories: Applicability and Exemptions," provides that compliance with the ICPC is required for "[p]lacements with parents and relatives when a parent or relative is not making the placement . . . ." ICPC Regulation No. 3., http://www.aphsa.org/content/AAICPC/en/ICPCRegulations.html (last visited April 19, 2017) [hereinafter ICPC Regulations]. The language further provides that "[w]here there is court jurisdiction with an open court case for dependency, abandonment, abuse and/or neglect, the case is considered a public court jurisdiction case, which requires compliance with ICPC Article III . . . ."[12] ICPC Regulation No. 3.

However, in the case of parents, the ICPC Regulations add to the confusion over the applicability of the ICPC in this case. As noted above, the ICPC defines the word "placement" and includes within its definition "the arrangement for the care of a child in a family free . . . home." Tenn. Code Ann. § 37-4-201 (Article II(b)). A family free home is the only placement category a placement with a parent might fall within as a

---

> caring agency or institution but does not include any institution caring for the mentally ill, mentally defective or epileptic or any institution primarily educational in character, and any hospital or other medical facility.

Tenn. Code Ann. § 37-4-201 (Article II(b)).

[11] Article VII of the ICPC grants each party state's general coordinator of activities under the ICPC the power to jointly "promulgate rules and regulations to carry out more effectively the terms and provisions of [the ICPC]." Tenn. Code Ann. § 37-4-201 (Article VII).

[12] We recognize that there is some dispute over whether the ICPC Regulations can serve to expand the scope of the ICPC beyond its plain terms. *Compare McComb v. Wambaugh*, 934 F.2d 474, 481 (3d Cir. 1991) (Regulation No. 3 expands the scope of the ICPC, and therefore, "the regulation as it might be applied here is of no effect and the statutory language must govern.") *and Ark. Dep't of Human Servs. v. Huff*, 65 S.W.3d 880, 887 (Ark. 2002) (adopting the reasoning in *McComb v. Wambaugh*) *with Ariz. Dep't of Econ. Sec. v. Leonardo*, 22 P.3d 513, 518 (Ariz. Ct. App. 2001) ("By adopting the ICPC . . . and delegating a representative of this state to participate in the activities of the [Association of Administrators of the Interstate Compact on the Placement of Children ("AAICPC")], Arizona has implicitly agreed to accept and abide by rules or regulations duly promulgated by the AAICPC.") *and Green v. Div. of Family Servs.*, 864 A.2d 921, 927-28 (Del. 2004) (Regulation No. 3 "further[s] the purposes of the ICPC" and is consistent with the liberal construction to be given the ICPC.). In this case, we conclude that, despite the seeming inconsistences between the ICPC and the ICPC Regulations, the result is the same.

parent's home would not be a "boarding home" or a "child-caring agency or institution." The ICPC Regulations define "family free" to mean "the home of a relative or unrelated individual whether or not the placement recipient receives compensation for care or maintenance of the child, foster care payments, or any other payments or reimbursements on account of the child's being in the home of the placement recipient . . . ." ICPC Regulation No. 3. But then the definition of the word "relative"[13] does not include a parent. *Id.* So, under the ICPC Regulations, a family free home would not include the home of the child's parent.

Despite the confusion, we conclude that the ICPC did not apply in this case. Even if we ignore the limiting language in Article III(a) of the ICPC, granting custody to Father would come within the limited exception found in ICPC Regulation No. 3 for "placements" with parents from whom the child was not removed. Regulation No. 3 provides that the ICPC does not apply:

> When the court places the child with a parent from whom the child was not removed, and the court has no evidence that the parent is unfit, does not seek any evidence from the receiving state that the parent is either fit or unfit, and the court relinquishes jurisdiction over the child immediately upon placement with the parent.

ICPC Regulation No. 3.

Here, all but the last elements of the exception appear to apply. The child was not removed from Father. The evidence presented at the de novo hearing failed to establish that Father was unfit. The circuit court considered disapproval of the provisional placement by the Alabama authorities. But the circuit court did not request evidence from Alabama that Father was either fit or unfit. The only element that was not present was the relinquishment of court jurisdiction, but the court did indicate that it was prepared to relinquish jurisdiction on "request of another court." Under the circumstances of this case, we conclude that it is appropriate to order the circuit court on remand to relinquish jurisdiction over Courtney R.

---

[13] The ICPC Regulations define "relative" to include the following relations:

> a birth or adoptive brother, sister, stepparent, stepbrother, stepsister, uncle, aunt, first cousin, niece, nephew, as well as relatives of half blood or marriage and those denoted by the prefixes of grand and great, including grandparent or great grandparent, or as defined in state statute for the purpose of foster and or adoptive placements.

ICPC Regulation No. 3.

D. AWARD OF CUSTODY TO FATHER

Mother raises two other issues on appeal: (1) whether the trial court erred in placing the child with Father if the ICPC was not considered; and (2) whether the trial court erred by removing child from the custody of DCS and placing it with Father. Both of these issues require an examination of the trial court's factual findings. Our review of a trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d at 692.

The record presented by Mother on appeal contains neither a transcript of the proceedings below nor a statement of the evidence. It consists only of the "technical" record (i.e. the parties' pleadings and the trial court's orders), a supplemental technical record from the juvenile court, and the trial exhibits.

As the party raising issues on appeal, Mother was "responsible for furnishing the appellate court with a record that will enable that court to reach the issues raised." *Word v. Word*, 937 S.W.2d 931, 933 (Tenn. Ct. App. 1996); *see* Tenn. R. App. P. 24 (providing for the filing of a transcript or statement of the evidence). The allegations of pleadings and statement of facts in briefs are not evidence and do not substitute for a transcript or statement of the evidence. *See Reid v. Reid*, 388 S.W.3d 292, 295 (Tenn. Ct. App. 2012). As we have explained, "[w]hen no transcript or statement of the evidence is included in the record on appeal, we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct." *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005); *accord Leek v. Powell*, 884 S.W.2d 118, 121 (Tenn. Ct. App. 1994). "Therefore, we may only reverse the trial court's decision if we find, based on the 'technical' record before us, that the trial court committed an error of law." *Flack v. McKinney*, No. W2009-02671-COA-R3-CV, 2011 WL 2650675, at *3 (Tenn. Ct. App. July 6, 2011).

We conclude that there was no error of law in this instance. And the lack of a transcript or statement of the evidence precludes us from reaching the other issues raised by Mother.

E. ATTORNEY FEES ON APPEAL

Father has requested an award of his attorney fees on appeal based on "this onerous frivolous appeal." Under Tennessee Code Annotated § 27-1-122 (2000),[14] we

---

[14] The statute provides as follows:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its

10

may award damages, including attorney fees, against an appellant if an appeal is frivolous or taken solely for delay.  The statute "must be interpreted and applied strictly so as not to discourage legitimate appeals."  *See Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977) (citing the predecessor to Tennessee Code Annotated § 27-1-122).  A "frivolous" appeal is one that is devoid of merit, has little prospect of success, or is lacking in justiciable issues.  *See id.*

We decline to award Father's attorney fees incurred on appeal.  We do not find this appeal frivolous or perceive that it was taken solely for delay.

## III.

We affirm the decision of the circuit court.  We remand the case to the trial court for the purpose of entering an order relinquishing jurisdiction over the child and for any other matters that are appropriate.

_____
W. NEAL MCBRAYER, JUDGE

---

own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122.